Please call the first case. 1-10-1423 Tenex Corporation v. Washington Party Do you have an opponent? I do, sir. Meet up at the table. Good morning, Justices, Counsel. May it please the Court. My name is Elizabeth Capaletti. I'm here on behalf of Tenex Corporation. Before I begin my argument, I did want to update the Court relative to the status of Petitioner's Exhibit No. 16. I did, when I received the oral argument date from this Honorable Court, I reviewed all of my documents, including the briefs, and I realized in the appendix that I hadn't referenced PX16. I immediately contacted the Court. They kindly looked into the record for me to make sure it wasn't just an error on my part in dictation. It was not there. I immediately found the exhibit at the Workers' Compensation Commission. The original exhibit was actually still with the Workers' Compensation Commission. Also attached to that exhibit was a transcript of hearing from August 22nd of 2008, which apparently never was transmitted to the Circuit Court either. I immediately filed a motion before this Honorable Court. Appellee would not stipulate to these records, although he does cite to them in his brief. I did file a motion before the Circuit Court. Judge Tolmere, who did certify the records, I subsequently brought them to the Appeals Division of the Circuit Court, which is where they still sit, and they haven't been bound yet for this Court. So I did want to advise this Court of that. I apologize that I didn't discover it earlier. I never cited to PX16 in my brief because it's still my position that it doesn't – it is not, as a matter of law, part of the record. But I do appreciate the fact that it should be part of the record, and I'm doing my best to do so. With that said, I'll – Can I ask you a question? Yes. How did he certify it as part of the trial record if it was never performed? Well, he said he thought he had seen it. And I don't want to misstate Judge Tolmere, but that's what he felt. He thought he had seen it. And when I say trial court, I mean he sits in his appellate capacity pursuant to the rules of this statute, which says that the Circuit Court is specifically in its appellate capacity. But I can't tell you, Your Honor. I wasn't there at the Circuit Court. I only began representing 10X at this level, but there is certainly no mention at the Circuit Court anywhere that anyone had a problem with the record at that level. It's respectfully submitted that as a matter of law, the Commission's decision granting Vargas' motion for reinstatement, they erred in doing so. The law is clear that for jurisdiction to be conferred on the Commission, a petition for reinstatement must be filed within 60 days of the petitioner's receipt of the notice of case dismissals. It's submitted in this matter that Vargas failed to file his petition for reinstatement within the 60-day jurisdictional period of time. Vargas' 01 case was dismissed on December 6th of 2004. His 2000 case was dismissed on December 5th of 2005. The petition for reinstatement was tendered and granted by Arbitrator Andros on March 8th of 2005, as well as a motion for consolidations. The matters then subsequently reappeared before Arbitrator Andros on March 17th of 2005, where they were again on a must-go status. Again, the matters were set for trial on June 7th of 2005. 10X appeared. Vargas did not. The matters were dismissed as of June 7th of 2005. The Commission then disseminated orders on June 20th of 2005, notifying the parties of the notices of case dismissal. Now, 10 days prior to those orders going out, there are also statuses generated by the Commission setting the matters on September 14th of 2005 before Arbitrator Andros. Let me ask you this. Sure. If a dismissal order of June 7th of 2005 was considered to be a void order, as opposed to an order entered erroneously, does that trigger the 60-day jurisdictional requirement? Because it had no jurisdiction in which to enter the order? Is that what you're asking? Does a void order trigger the 60-day jurisdictional requirement for filing a motion to reinstate a void order? A void order. Does it trigger anything? But I don't know if there's a case that says that. I would submit to you. That's why I asked. Sure. I did not see a case that was directly on point to that relative to a void order. I would submit to you, though, that there's no reason that that order is void from June 7th of 2005. I mean, it was properly dismissed by the arbitrator. It was called for trial. 10X certainly appeared, waited until 1030 in the morning, and then the matter was dismissed. It had previously been properly on the status call on March, on May 17th of 2005, again, where 10X did appear in Vargas Student. So we generally accord deference to the commission's interpretation of its own rules, correct? Absolutely. So what is the standard of review for us to be able to overturn the commission's decision on a situation where they interpret the rules and procedures? What's the standard of review? A standard of review relative to the – well, I would say if you're asking for specific rules, it would be abuse of discretion, but that assumes that they have jurisdiction in which to enter the order. And my argument is they don't have the jurisdiction because the case is clear that it must be filed within 60 days without – From the time whatever happens triggers that.  Once the notice of case dismissals are, in fact, generated by the commission, and 60 days from the time that the petitioner, in fact, receives the notice. It does have to be a receipt of those notices. And there's no doubt in this matter that Vargas did, in fact, receive the notices. The question was really was there a confusion as had there been an alternative order entered by the commission setting them on September 14th. Well, clearly that's not accurate because the cases weren't, in fact, on the call on September 14th of 2005. They, in fact, were dismissed as of June 20th of 2005. I think I understand the argument. I don't think you want to spend all of your time on that. You have some other issues you need to get to. Sure. Absolutely. Absolutely. So from – my position is that Vargas did, in fact, receive the notice within the 60 days. And pursuant to the law, it's jurisdictional. And therefore, he must file a petition for reinstatement within 60 days. He failed to do so. Therefore, the commission had no jurisdiction in which to enter an order reinstating the matters. Now, if this honorable court feels that I'm inaccurate about jurisdiction, I still feel that Vargas failed to perfect his review under Section 19B of the Act. Section 19B of the Act is clear as to the requirements that are necessary for an appealing party. The appealing party must, one, file a petition for review within 30 days of receipt of the decision and notice of decision. And, two, the appealing party must also file an agreed statement of facts, a correct transcript of evidence within 35 days with an additional extension of time of 30 days. Further, the agreed statement of facts and correct transcript of evidence must be authenticated by either the party's or the party's attorneys. Both requirements are necessary to perfect the appeal. In fact, the Supreme Court has said the right to review under said section is entirely statutory. And this Court has held that the method provided by statute is surregineers and that in order for a party to obtain a review of the decision of the arbitrator by the commission, the statute must be strictly followed. I would submit, then, any actual discussion relative to a stenographic stipulation is misplaced because jurisdiction cannot be weighed, stipulated to, or consented to by the parties. With that said, I do not believe that the stenographic stipulation is, in fact, applicable in this instance. The stenographic stipulation agreed to by the parties is the same stipulation which is always agreed to at the commission. Basically, both parties agree that if either party files a petition for review of arbitrator's decision and orders a transcript of hearings, and if the commission's court reporter does not furnish the transcript within the time set by law, the other party will not claim the commission lacks jurisdiction to review the arbitrator's decision. So it's clear. It basically says, hey, if the court reporter doesn't get the transcript done on time, I am not going to hold up the appeal by saying, no, I'm objecting jurisdiction, because it's not the appealing party's fault. It's the court reporter's. That's what the stenographic stipulation says. I would submit to you in the present matter the stenographic stipulation is not applicable. The court reporter did her job. The transcript of a hearing was, in fact, prepared and filed with the commission on June 7th of 2005. Invoices were sent to Vargas. A reminder invoice was also sent July 25th of 2005. In the interim, the commission generated a return date on review. That set in the matter for August 10th of 2007, stating to the parties pursuant to their own rules that by August 10th of 2007, you must present to us the authenticated transcript. We know that the transcript's been prepared. Now, parties, you must get together, sign it, present it to us by August 10th of 2007. It's submitted that that was not done. Vargas did not present the authenticated transcript by that date, as per the rules, as per the statute. So for you, it's a matter of jurisdiction. It's not a matter of due diligence, is the commission? Correct. It's a matter of jurisdiction. It's absolutely a matter of jurisdiction. The question is, if you have to follow the statute strictly, and the statute basically says it must be done in 35 days with an additional 30-day extension, thereby also the commission through its own rules obviously has extended that a bit further. I'm not sure it's an open question as to pursuant to the statute if that is a power that they have to do, but that's the way it is done at the commission. They generate the return dates on review once they know that the transcripts have, in fact, been prepared. Thereafter, they tell the parties, you must authenticate the transcript by this date. And I'm saying the stenographic stipulation isn't applicable because the transcript was, in fact, prepared timely by the court reporter. It was done by June 7th of 2007. So Tenex rightly objected to jurisdiction at that point, because why should he authenticate a transcript when there's no stipulation for the court? The stipulation was not valid. The court reporter got her job done. The transcript was ready to go. The commission said, you need to have this done by August 10th, and it wasn't done. All right. So you've attacked jurisdiction now on two independent basis. What about the causation, if we get to that issue? Relative to underlying causation? The merits of the causation. Well, I think that relative to the merits of the causation, we could also go back to Petitioner's Exhibit No. 16, which I feel was allowed into the record in contradiction of Section 19E of the Act, which is clear. It states that on a review before the commission that you cannot offer any additional evidence. This is clearly additional evidence that was offered after the arbitration decision, after proofs had been closed. It had not been offered at trial. Act specifically states that that is not allowed. The commission has no powers to take that evidence. The Act specifically says you can't take that evidence. Based upon that evidence, that's how we get to causation, which is that is all the evidence, the initial evidence. Let's assume we get to causation. Do you want to stand or fall simply on jurisdiction? Pardon me? Do you want to stand or fall simply on the jurisdictional issues, or do you want to argue for them? No, no, no. I can speak to you about causation as well. Relative to the causation, I do feel that the only real medical evidence in the record is Dr. and I'm probably mispronouncing, Katzowitz. She does give a causation opinion, but that causation opinion is supported by no other information in the record as to the specifics as to how the injury occurred. There's nothing. It just assumes an injury. And it's unclear as to if she even knows how the injury occurred. Further, all of the information relative to the initial documentation about the Petitioner's injury is contained in PX16. So I would submit to you that her causation opinion is not valid as the fact that it's not supported by the evidence in the records, and there's no clear understanding that she had any understanding as to how the mechanism of the injury occurred. What about Slaney and Hennessey? Slaney and Hennessey, I looked through the record because Appelli did indicate that they gave positive causation opinions. I could not find them. I do see that they say that he has degenerative disc disease. That's all that I found in relative to them providing specific opinions as to causation. They certainly indicate that he has degenerative disc disease, but I looked through the record and I didn't find positive causation opinions from either of those two doctors. They did speak to degenerative disc disease, and that was the diagnosis, and it was a surgery that was recommended to cure the degenerative disc disease. If I could, I would like to speak a little bit further relative to the authentication of the transcript. You have about one minute, and then you'll have rebuttal. Okay. All right. Also, my argument relative to the transcript authentication, not only was it not timely filed, it has, in fact, never been authenticated. The commission, in fact, compelled Tenex's attorney to cooperate with authentication, basically telling Tenex's attorney, you must put your signature on this transcript. There's no power in the Act that allows them to do that. The Act does afford an avenue if the parties can't agree. It says to the commission, you can designate an arbitrator to authenticate the transcript, but it certainly does not allow them the power to compel Tenex's attorney to sign it. They're not a court of general jurisdiction. The only powers that they have are powers that are granted to them by statute, and there's certainly nothing in the statute that allows them to compel Tenex's attorney to authenticate the statute. Thank you. Thank you. Counsel, please. Thank you. Good morning. I'm Michael Johnson for Juan Vargas. Initially, I'd like to suggest to this Court that the appellate process here has been fatally flawed by the failure of the appellant to include Petitioner's Exhibit 16 in the record that was provided to Judge Tolmere. He made his finding absent. What did the commission say about Exhibit 16? The commission let Exhibit 16 into evidence. If the Court is not convinced by my argument that the appeal should be dismissed for the lack of the Exhibit 16. It's always a possibility. Yes, it is, indeed. Then I suggest that the ease with which Judge Tolmere sustained the decision of the commission absent Petitioner's Exhibit 16 really stands in support of the argument I made in my brief that if Petitioner's Exhibit 16 was, if its admission was error, it was merely a harmless error. The unique portions of Petitioner's Exhibit 16 that aren't included in other medical records really only go to the issue, they're germane to the issue of accident. The accident was never really disputed. They accepted the claim. Even Judge Hagen found accident. And all the causation opinions are contained in all the unrebutted causation opinions. What about the jurisdictional question about whether there was any jurisdiction after 60 days elapsed after the DWP without a motion to reinstate? Well, I did file a motion to reinstate, but also it was a slash motion to strike the order of June 7th. My position was the order of June 7th DWP in the case was entered in error. Well, it may have been entered in error, but was it void? Pardon me, Your Honor? Was it void? I believe it was void. Why was it void? Pardon me? Why was it void? The commission was correcting their own error. I don't understand what you mean, the commission was correcting its own error. Well, Your Honor, the dismissal was followed three days later by an order setting the matter for September. So that order setting the matter for September in and of by itself would have overruled the dismissal of June 7th. It never vacated the order. Pardon me? It never vacated the order. I believe that the substance of Arbitrator Hagen's order determining that the dismissal was entered by the error of the commission was in fact the equivalent of an order voiding the June 7th order. But you received a notice of a DWP on June 23rd. It didn't do a thing within 60 days. Why not? Because I received an order three days later. I had been in front of Arbitrator Andros, and the previous DWP from prior counsel was vacated. Judge Andros told me that the matter would not come up on the call again until I received written notice from the commission. So shortly thereafter when I received the dismissal, it was inconsistent with what Arbitrator Andros had told me and inconsistent with my understandings of the procedures. And this is what Arbitrator Andros testified to. So when three — I thought it was a mistake. So when three days later I received the subsequent order of court — Heck of a gamble, don't you think? Pardon me, Your Honor? Heck of a gamble, because if we find that there was a lack of jurisdiction to vacate that DWP without a motion from you, in 60 days your client loses an entire cause of action because you didn't come in within 60 days of receiving a DWP order. That's a heck of a gamble. I guess you're right, Judge. I relied on the subsequent order because it's the one that made sense. It was the one consistent with what Arbitrator Andros has told me. It was the one that was consistent with my understanding of proper procedures at the industrial commission. In regards to the — in regards to the statement of the filing of the transcript, I believe the Contreras case establishes that this is not a jurisdictional issue when the stenographic stipulation has been agreed to by both parties. The transcript was, in fact, filed by the court reporter on June 7th, with the return date being August 10th. I did not receive a copy of it prior to August 10th, and I so notified Commissioner Dauphine's office that told me to — when I got a copy of the transcript, to bring my motion. I got it a couple days later. I contacted defense counsel and asked them to authenticate the transcript. Sent them an email, made a number of phone calls. I received no response. I was not sure — I didn't even know that they were refusing to cooperate in the authentication of the transcript process. I finally brought my motion to authenticate the transcript and to supplement the record with Petitioner's Exhibit No. 16, which I realized, when I received a copy of the transcript, was not part of the record. We had an argument on my request to file the transcript, have the transcript authenticated, and my request to supplement the record. The court determined that it was a matter of due diligence rather than jurisdiction, granted the motion to have the transcript authenticated, at which time counsel indicated that he had no objection to supplementing the record with Petitioner's Exhibit No. 16. With regard to the causation issue, your opposing counsel had indicated that you did not see where Salehi and Hennessey set forth opinions that established a causal connection in this case. Well, I would suggest that Dr. Hennessey's letter to Dr. Getzovitz — Dr. Hennessey's May 13, 2002, letter containing Petitioner's Exhibit No. 19 contains the opinion that he believes the injuries to be work-related, and he refers to three years, which is the date that he's had them for three years, which corresponds with the date of the occurrence. Dr. Getzovitz gives a very straightforward opinion on causation. She had been treating him for a number of years at the time. Her opinion letter was dated after she had had all the exchanges with Dr. Hennessey, and it was a very straightforward medical opinion on causation, an opinion that was unrebutted. You know, Mr. Vargas was receiving his benefits, and his benefits were terminated not as a result of an IME, not as a result of a change of his medical status, but when his company closed and he received a termination letter. After that date, they would no longer authorize any TTD, they wouldn't authorize any medical treatment, but there was no medical basis for that termination at any time. As you can see from the attachments to the 19B exhibit, we offered him for an IME in writing on multiple occasions. You know, this was never really defended at the arbitration hearing. The only questions that were ever asked of Mr. Vargas by the respondent had to do with some sort of previous settlement negotiations that had taken place with the counsel before I became involved. So I believe that the petitioner's own testimony, when coupled with the unrebutted causation opinions, even outside or especially outside of Petitioner's Exhibit No. 16, sustained the proponents of evidence that this matter was related, that there was a work-related accident, and that his condition of ill-being at the time of the hearing, his entitlement to past benefits, and his entitlement to prospective care were indeed proven by the petitioner's case. Are there any other issues that the Court would like me to address? Thank you. Thank you for your time, Your Honors. Roberto, please. Just briefly, I wanted to respond relative to the reinstatement and the facts around the dismissal. The matter was in fact set for hearing on, set for status on May 17th of 2005. It's above the line, which means it's a must-go status. So pursuant to the rules of the Illinois Workers' Compensation Commission, attorneys or petitioners are compelled to be there. I mean, that's what the rules say. It's above the line. So your case is either going to be dismissed or it's going to be set for trial. The matter was in fact appropriately set for trial by Arbitrator Andros on June 7th of 2005. Again, Vargas did not appear. Tenex appeared. And the matter was appropriately dismissed by the arbitrator. There was a notice setting the matter for September 14th of 2005. But that, in fact, is dated 10 days before the dismissal notices are actually sent out. It's dated June 10th of 2005. The dismissal notices aren't set out until June 20th of 2005. And when all is said and done, the petitioners at counsel received the notices. And I speak to the case in my reply brief. I know it's not on point here, but it's illustrated with the same fact. If it's jurisdictional, whether or not there was detrimental reliance, whether or not the arbitrator told Vargas' counsel something that was inaccurate, the matter is jurisdictional. And even if the judge says, hey, file this petition, I'll give you jurisdiction, I'll allow you to file your petition to let this get to the appellate court, in Mitchell the Supreme Court said no. It seemed like a harsh result, but it was the duty of the litigants to follow their case and follow them for jurisdictional reasons. And I would submit to you that's the same here. I mean, yes, there were definitely conflicting orders. I don't disagree with that. But if there's conflicting orders, it's the duty then of Vargas to then determine that and file the motion within a 60-day jurisdictional period. Relative to the 19B, I do not believe the commission has jurisdiction because the appeal was not perfected. 19B is very clear about the requirements, what needs to be done. This Court has held that that is jurisdictional. The Supreme Court has held that the requirements are jurisdictional. And again, I would submit that the stenographic stipulation is not appropriate in this case or is not binding because the court reporter, in fact, timely filed the transcript. So the question is, is there jurisdiction pursuant to Section 19B of the Act and pursuant to the commission's own rules which say the transcript must be filed on this date? The transcript was not filed. And further, there has never been an authenticated transcript. 19B of the Act allows the commission a way in which to authenticate the transcript if the parties don't agree. The parties clearly did not agree here. The commission does not have powers of general jurisdiction. It only has powers that are granted to it by the legislature. The legislature granted it a power to allow an arbitrator to authenticate a transcript if the parties did not agree. That's not what transpired here. So I would submit to you, to this date, there is no authenticated transcript in pursuant to Section 19B of the Act, that there has never been a perfected appeal, and the decision of Arbitrator Hagan of March 30th of 2007 is, in fact, the decision of the commission. Thank you for your time. We'll take the matter under advisement for disposition.